UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:19-cv-01029

| | | |
|---|---|---|
| FRED NEKOUEE, individually, | : | |
| | : | |
| Plaintiff; | : | |
| | : | |
| vs. | : | |
| | : | |
| 1089 M3 LLC, a Colorado limited liability company; | : | |
| | : | |
| Defendant. | : | |
| _____/: | | |

## **COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues the Defendant, 1089 M3 LLC, a Colorado limited liability company (sometimes referred to as "Defendant"), for injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.      Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

2.      Defendant's property, the Fairfield Inn & Suites has an address of 1089 S. Hover Street, Longmont, Colorado 80501, and is situated in Boulder County, Colorado ("Fairfield Inn").

3.      Venue is proper in the District of Colorado because venue lies in the judicial district of the situs of the property.   The Defendant's property is located in and does business within this judicial district.

4.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

5.      Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.   Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility.

6.      Mr. Nekouee travels to the Longmont-Firestone area every three to six months to accompany his brother at heavy equipment auctions and to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to vacation.

7.      On his way back from the Rocky Mountain National Park, Fred Nekouee stayed at the Fairfield Inn which forms the basis of this lawsuit on October 2, 2018 with a checkout on October 3, 2018.

8.      Fred Nekouee requested an accessible room.

9.      Fred Nekouee stayed in accessible room 403 at the Fairfield Inn.

10.     Due to the barriers to access Fred Nekouee encountered at the Fairfield Inn, Fred Nekouee is deterred from visiting the Fairfield Inn Inn to avail himself of the goods and services offered to the public there.

11.     Fred Nekouee visited the Longmont-Firestone area near the Fairfield Inn in early August 2018 and again on October 3, 2018 to attend a heavy equipment auction and he visited Rocky Mountain National Park on October 2, 2018.

12.     The Plaintiff returned to the Longmont-Firestone area in the first week of February of 2019.

13.     The Plaintiff has definite plans to return to the Longmont-Firestone area in early May 2019 to attend a heavy equipment auction and to vacation.

14.     Fairfield Inn is close to the heavy equipment auction and dealerships he visits, and it is a good hotel location from which to make day trips to Rocky Mountain National Park.

15.     The Plaintiff likes to stay at moderately-priced hotels that are a chain like Fairfield Inn.

16.     The Plaintiff plans to return to the Fairfield Inn again if the barriers to access are removed.

17.     The Plaintiff has encountered architectural barriers at the subject property.

18.     The barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability or those accompanying him to park a vehicle, and have impaired his ability to access the property.

19.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

20.     The Plaintiff cannot move up steep inclines or down steep slopes in his wheelchair because he lacks the strength and also risks tipping his wheelchair backwards or forwards.

21.     The Plaintiff encountered and observed barriers to access in the parking lot and walking surfaces, the lobby restrooms, the breakfast area, the elevator, accessible guestroom 403, the restroom in the accessible room 403, and in the pool and fitness areas of the Fairfield Inn.

22.     The Plaintiff is deterred from visiting the Fairfield Inn because of the difficulties he will experience there until the property is made accessible to him in a wheelchair.

23.     Defendant owns, leases, leases to, or operates a place of public accommodation (an inn, hotel, motel, or other place of lodging) as defined by the ADA, 42 U.S.C. § 12181(7)(A), and

the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104, the Fairfield Inn.

24.     Fairfield Inn is a place of public accommodation.

25.     Defendant is responsible for complying with the obligations of the ADA.

26.     Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 31 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

27.     Fred Nekouee desires to visit the Fairfield Inn not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

28.     The Defendant has discriminated against the individual by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, as prohibited by 42 U.S.C. § 12182 et seq.

29.     The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

30.     Preliminary inspections of the Fairfield Inn have shown that ADA violations exist.

31.     The ADA violations that Fred Nekouee personally encountered or observed include, but are not limited to:

**WALKING SURFACES AND PARKING**

a.   (i) In the parking lot, the front section of the parking space shown in the photograph below has a running slope steeper than 1:48 (2%).   (ii) This front section of the parking space for disabled patrons has a running slope steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   (iii) This slope in this parking space made the Plaintiff's wheelchair unstable.   (iv) The action required to reduce this slope in this parking space is easily accomplishable and able to be carried out without much difficulty or expense.



b.   (i) In the parking lot, the running slope of the front section of the access aisle serving the disabled parking spaces shown in the photograph in subparagraph (a) above is steeper than 1:48 (2%).   (ii) The running slope of the front section of this access aisle is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   (iii) While moving in his wheelchair, the Plaintiff encountered this

steep slope and it made his wheelchair unstable, and it was very difficult for his to move toward the walking surface in this access aisle.   (iv) The action required to reduce the slope of this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

c.   (i) The cross slope of the walking surface to the right of the entrance as one faces the entrance is steeper than 1:48 (2%).   (ii) The cross slope of this walking surface is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3.   (iii) While moving in his wheelchair toward the entrance, the Plaintiff encountered this slope on this walking surface and it made his wheelchair unstable.   (iv) The action required to reduce the cross slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.

d.   (i) The cross slope of the walking surface from the left side of the hotel lobby entrance as one faces the entrance is as steep as about 1:22.7 (4.4%) and steeper than 1:48 (2%).   (ii) The cross slope of this walking surface is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG 403.3.   (iii) While moving in his wheelchair, the Plaintiff encountered this this steep cross slope, and it made his wheelchair unstable.   (iv) The action required to reduce the slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.

e.   (i) The accessible ramp landing shown in the photograph below to the left side of the hotel lobby entrance as one faces the entrance has a slope as steep as about 1:20.8 (4.8%).   (ii) This slope of this ramp landing is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 405.7.1.   (iii) While moving in

his wheelchair, the Plaintiff encountered this steep slope of this ramp landing, and he could not rest on the landing due to its steep slope, and it made it difficult for him to maneuver his wheelchair to turn toward the entrance.   (iv) The action required to reduce the slope of this ramp landing is easily accomplishable and able to be carried out without much difficulty or expense.



f.   (i) The accessible ramp bottom landing shown in the photograph in subparagraph (a) above to the right side of the hotel lobby entrance as one faces the entrance has a slope as steep as about 1:18.9 (5.3%) and steeper than a slope of 1:48 (2%).   (ii) This slope of this ramp bottom landing is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG 405.7.1.   (iii) Due to the slope of this ramp

bottom landing, the Plaintiff required assistance to maneuver his wheelchair on this landing to move toward his vehicle.   (iv) The action required to reduce the slope of this ramp bottom landing is easily accomplishable and able to be carried out without much difficulty or expense.

g.   (i) The accessible ramp landing on the side of the hotel shown in the photograph below has a slope as steep as about 1:10 (10%) and steeper than a slope of 1:48 (2%), and the cross slope of the walking surface adjacent to this ramp has a cross slope steeper than 1:48 (2%).   (ii) The slope of this accessible ramp landing and the cross slope of the walking surface adjacent to the ramp are steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 405.7.1.   (iii) Due to the steep slope of this landing and the adjacent walking surface, the Plaintiff required assistance to move up this ramp in his wheelchair.   (iv) The actions required to reduce the slope of this ramp landing and the cross slope of the adjacent walking surface are easily accomplishable and able to be carried out without much difficulty or expense.



**LOBBY ENTRANCE DOOR**

h.  (i) The left side (as one faces the entrance) of the exterior door threshold of the lobby entrance is about 1.25 inches high above ground level and is greater than 0.75 inches high.   (ii) The left side of this door threshold is higher than 0.75 inches for an existing or altered threshold and higher than 0.5 inches for an original threshold installed after 2010, in violation of Federal Law 2010, ADAAG § 404.2.5.   (iii) Due to the height of this threshold, the Plaintiff required assistance to move over this threshold in his wheelchair. (iv) The action required to reduce the height of this threshold is easily accomplishable and able to be carried out without much difficulty or expense.

**MEN'S RESTROOM IN THE LOBBY**

i.   (i) The force needed to open the door to the men's restroom in the lobby is about 12 pounds and more than 5 pounds.   (ii) The force required to open this door exceeds the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAAG § 404.2.9.   (iii) The Plaintiff encountered this door in his wheelchair, and due to the force necessary to open this door, he required assistance to open this door to the men's restroom. (iv) The action required to reduce the force necessary to open this restroom door is easily accomplishable and able to be carried out without much difficulty or expense.

j.   (i) The elapsed time for the men's restroom door in the lobby to close from an open position of 90 degrees to 12 degrees from the latch is about 3 seconds and less than 5 seconds.   (ii) The time required to move this restroom door to a position of 12 degrees from the latch from an open position of 90 degrees is less than the minimum required time of 5 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.   (iii) Due to the short time this door remains open, the Plaintiff required assistance to enter the men's restroom in the lobby.   (iv) The action required to adjust the door closer is easily accomplishable and able to be carried out without much difficulty or expense.

k.   (i) In the men's restroom in the lobby, the centerline of one of the two side-by-side toilet paper dispensers is not between 7 and 9 inches from the front of the water closet or toilet.   (ii) The centerline of this toilet paper dispenser is not between a minimum of 7 inches and a maximum of 9 inches from the front of the water closet, in violation of Federal Law 2010, ADAAG § 604.7.   (iii) The toilet paper dispenser furthest from the front of the toilet was out of paper, so the Plaintiff tried but could not reach the toilet paper from the

dispenser closest to the toilet from a normal sitting position on the toilet.   (iv) The action required to relocate or replace this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

l.   (i) In the men's restroom in the lobby, the toilet seat cover dispenser outlet is about 56 inches above the floor and higher than 48 inches above the floor.   (ii) This toilet seat cover dispenser is higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.1.   (iii) Due to the height of this toilet seat cover dispenser outlet, the Plaintiff tried but could not reach a toilet seat cover.   (iv) The action required to relocate this toilet sea cover dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

m.   (i) In the men's restroom in the lobby, the toilet does not have the flush control mounted on the open and wide side of the clear floor space as shown in the photograph below.   (ii) The flush control on this toilet is not mounted on the open and wide side of the clear floor space, in violation of Federal Law 2010, ADAAG § 604.6.   (iii) Due to the location of the flush control, the Plaintiff could not reach the flush control after he transferred from the toilet back to his wheelchair.   (iv) The action required to change out the toilet tank or to relocate this flush control is easily accomplishable and able to be carried out without much difficulty or expense.



n.    (i) In the men's restroom in the lobby, the accessible compartment door lock requires tight grasping and pinching to operate.   (ii) This door lock requires tight grasping and pinching to operate, in violation of Federal Law 2010, ADAAG §§ 309.4 and 404.2.7. (iii) The Plaintiff tried but could not operate this door lock with a closed fist or loose grip. (iv) The action required to replace this door lock is easily accomplishable and able to be carried out without much difficulty or expense.

**BREAKFAST AREA**

o.    (i) In the breakfast area, the coffee dispenser handles are located at about 53 inches above the floor and higher than 48 inches above the floor.   (ii) These coffee dispenser handles are higher than 48 inches above the finish floor where the reach depth is less than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) From his wheelchair, the Plaintiff could not serve himself coffee due to the height of these coffee

dispenser handles above the floor.   (iv) The action required to relocate these coffee dispensers is easily accomplishable and able to be carried out without much difficulty or expense.

p.   (i) In the breakfast area, the juice machine dispenser buttons are about 52 inches above the floor and are higher than 48 inches above the floor.   (ii) These juice machine dispenser buttons are higher than 48 inches above the finish floor where the reach depth is less than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) From his wheelchair, the Plaintiff tried but could not reach these juice machine dispenser buttons to serve himself juice due to their height above the floor.   (iv) The action required to relocate or replace the juice machines is easily accomplishable and able to be carried out without much difficulty or expense.

q.   (i) In the breakfast area, the milk cartons and the yogurt containers in the mini-fridge are about 62 inches and 55 inches respectively above the floor and higher than 48 inches above the floor.   (ii) These milk cartons and yogurt containers are higher than 48 inches above the finish floor where the reach depth is less than 20 inches, and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) From his wheelchair, the Plaintiff tried but could not reach a milk carton or yogurt from the mini-fridge due to their height above the floor.   (iv) The actions required to relocate these milk cartons and yogurt containers or the shelves in the mini-fridge are easily accomplishable and able to be carried out without much difficulty or expense.

**ACCESSIBLE GUESTROOM 403**

r.   (i) The force needed to open the door to accessible guestroom 403 is about 13

pounds and more than 5 pounds.   (ii) The force required to open this door exceeds the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAAG § 404.2.9.   (iii) The Plaintiff encountered this door in his wheelchair, and due to the force necessary to open this door, he required assistance to open this door.   (iv) The action required to reduce the force necessary to open the lobby door is easily accomplishable and able to be carried out without much difficulty or expense.

s.   (i) The time for the door to accessible guestroom 403 to close from an open position of 90 degrees to 12 degrees from the latch is less than five seconds.   (ii) From an open position of 90 degrees, the time required to move the door to a position of 12 degrees from the latch is less than 5 seconds, in violation of Federal Law 2010, ADAAG 404.2.8.1.   (iii) The Plaintiff required assistance to hold this door open so he could enter into guestroom 403 in his wheelchair because the door closed so quickly.   (iv) The action required to adjust this door closer to close more slowly is easily accomplishable and able to be carried out without much difficulty or expense.

t.   (i) In accessible guestroom 403, the reading light switch near the bed is installed at about 51 inches above the floor and higher than 48 inches above the floor.   (ii) This reading light switch is installed higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) The Plaintiff observed this condition, and it deters him from staying at the Fairfield Inn.   (iv) The action required to relocate this reading light switch is easily accomplishable and able to be carried out without much difficulty or expense.

u.   (i) In accessible guestroom 403, the ice container and water cups are located on a

shelf over 57 inches above the floor and higher than 48 inches above the floor.   (ii) These ice containers and water cups are higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) From his wheelchair, the Plaintiff tried but could not reach the ice container and cups due to their height above the floor.   (iv) The actions required to relocate the ice container and cups and to put in place a written policy to have all such items in the accessible room located no more than 48 inches above the finish floor within the reach height of an individual in a wheelchair are easily accomplishable and able to be carried out without much difficulty or expense.

v.   (i) In accessible guestroom 403, the security latch on the door is installed at about 59 inches above the floor and higher than 48 inches above the floor.   (ii) This security latch is higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal law 2010, ADAAG § 404.2.7.   (iii) From his wheelchair, the Plaintiff tried but could not close this security latch due to its height above the floor.   (iv) The action required to relocate this security latch is easily accomplishable and able to be carried out without much difficulty or expense.

w.   (i) In accessible guestroom 403, clear floor space is not provided in front of the lamp in the corner near the window as it is blocked by a settee bench.   (ii) Clear floor space of a minimum of 30 by 48 inches is not provided in front of the lamp in the corner near the window, in violation of Federal Law 2010, ADAAG § 305.3.   (iii)   From his wheelchair, the Plaintiff tried but could not reach the switch to the lamp in the corner near the window since access to the lamp is blocked by a settee bench in front of it.   (iv) The actions required to relocate the lamp or the settee bench and to put a written policy in place not to block the clear floor space in front of the lamp are easily accomplishable and able to

be carried out without much difficulty or expense.

**RESTROOM IN ACCESSIBLE GUESTROOM 403**

x.   (i) In the restroom in accessible guestroom 403, neither a permanent seat at the head end of the bathtub or a removable in-tub seat is provided.   (ii) This bathtub does not have a permanent seat at the head end of the bathtub or a removable in-tub seat, in violation of Federal Law 2010, ADAAG §§ 607.3 and 610.2.   (iii) Due to the lack of seating in the bathtub, the Plaintiff could not bathe in this bathtub.   (iv) The action required to provide seating in this bathtub is easily accomplishable and able to be carried out without much difficulty or expense.

y.   (i) In the restroom in accessible guestroom 403, the side wall grab bar only extends about 50 inches from the rear wall and does not extend a minimum of 54 inches from the rear wall.   (ii) This side wall grab bar does not extend a minimum of 54 inches from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.   (iii) Due to the lack of extension of this side wall grab bar from the rear wall, the Plaintiff had difficulty using this side wall grab bar to transfer himself from his wheelchair to the toilet and back again.   (iv) The action required to replace or relocate this side wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

z.   (i) In the restroom in accessible guestroom 403, the centerline of the toilet paper dispensers are not between 7 and 9 inches from the front of the toilet.   (ii) The centerline of these toilet paper dispensers are not between 7 and 9 inches from the front of the water closet or toilet, in violation of Federal Law 2010, ADAAG § 604.7.   (iii) Due to the location of the toilet paper dispensers, the Plaintiff could not reach toilet paper from a normal sitting position on the toilet.   (iv) The action required to relocate or replace these

toilet paper dispensers is easily accomplishable and able to be carried out without much difficulty or expense.

**POOL**

aa.   (i) The force needed to open the door to the pool area is about 11 pounds and more than 5 pounds.  (ii) The force required to open this door exceeds the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAAG § 404.2.9. (iii) The Plaintiff encountered this door in his wheelchair, and due to the force necessary to open this door, he required assistance to open this door.  (iv) The action required to reduce the force necessary to open this door is easily accomplishable and able to be carried out without much difficulty or expense.

bb.   (i) The elapsed time for door to the pool area with a closer to close from an open position of 90 degrees to 12 degrees from the latch is about 3 seconds and less than 5 seconds.  (ii) The time required to move this door to the pool area to a position of 12 degrees from the latch from an open position of 90 degrees is less than the minimum required time of 5 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.   (iii) Due to the short time this door remains open, the Plaintiff required assistance to enter the pool area.   (iv) The action required to adjust this door closer is easily accomplishable and able to be carried out without much difficulty or expense.

**LAUNDRY**

cc.   (i) The force needed to open the door to the laundry is about 11 pounds and more than 5 pounds.  (ii) The force required to open this door exceeds the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to

fully open a door, in violation of Federal Law 2010, ADAAAG § 404.2.9.   (iii) The Plaintiff encountered this door in his wheelchair, and due to the force necessary to open this door, he required assistance to open this door.   (iv) The action required to reduce the force necessary to open this door is easily accomplishable and able to be carried out without much difficulty or expense.

dd.   (i) The elapsed time for door to the laundry with a closer to close from an open position of 90 degrees to 12 degrees from the latch is about 3 seconds and less than 5 seconds.   (ii) The time required to move this door to the laundry to a position of 12 degrees from the latch from an open position of 90 degrees is less than the minimum required time of 5 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.   (iii) Due to the short time this door remains open, the Plaintiff required assistance to enter the laundry.   (iv) The action required to adjust this door closer is easily accomplishable and able to be carried out without much difficulty or expense.

**FITNESS CENTER**

ee.   (i) The force needed to open the door to the fitness center is about 10 pounds and more than 5 pounds.   (ii) The force required to open this door exceeds the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAAG § 404.2.9. (iii) The Plaintiff encountered this door in his wheelchair, and due to the force necessary to open this door, he required assistance to open this door.   (iv) The action required to reduce the force necessary to open this door is easily accomplishable and able to be carried out without much difficulty or expense.

ff.   (i) In the fitness center, clear floor or ground space of a minimum of 30 inches is

not provided between the elliptical machine and the towel basket, and between the elliptical machine and the cycling machine. (ii) As set forth above, a minimum of 30 inches of clear floor space is not provided, in violation of Federal Law 2010, ADAAG § 305. (iii) While moving in his wheelchair, the Plaintiff's path was blocked because of the lack of clear floor space between the elliptical machine and the towel basket, and between the elliptical machine and the cycling machine. (iv) The actions required to move these items and to put a written policy in place to maintain clear floor space are easily accomplishable and able to be carried out without much difficulty or expense.

**ELEVATOR**

gg. (i) The vertical change in level between the floor and the top of the door threshold is greater than 0.25 inches and is not beveled. (ii) In the fitness center, the change in level between the floor and the door threshold is greater than 0.25 inches and is not beveled, in violation of Federal Law 2010, ADAAG § 303.2. (iii) While moving in his wheelchair, the Plaintiff required assistance to move over this change of level to enter the elevator. (iv) The action required to bevel this threshold is easily accomplishable and able to be carried out without much difficulty or expense.

32.     All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

33.     The discriminatory violations described in paragraph 31 are not an exclusive list of the Defendant's ADA violations. Plaintiff requires the inspection of the Defendant's places of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access and to determine all of the areas of non-compliance with

the Americans with Disabilities Act.

34.     The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's building and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above.   The individual Plaintiff, and all others similarly situated, will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

35.     Defendant has discriminated against the individual by denying individuals access to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.   Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

36.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted.

37.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

38.     Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

39.     Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendant.

40.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the Fairfield Inn and the parking lot, access aisles and walkways along the accessible route, to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendant cures their violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a.     That the Court issue a Declaratory Judgment that determines that the

Defendant at the commencement of the subject lawsuit is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.      Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by taking such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.      An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d.      Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby designates

Denver, Colorado as the place of trial for this action.

Respectfully submitted,

s/Robert J. Vincze
Robert J. Vincze (CO #28399)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*